We have three argued cases today. The first of these is number 13-7079, Ladd v. Shinseki, and Mr. Stoltz. Is that how you pronounce it? Yes, sir. Good morning, Your Honors, and may it please the Court. Veterans error, legal error in this case, is found at appendix page 2. Veterans Court found that, quote, because the representative is not an employee of VA or otherwise his adversary, the untimely file in Mr. Ladd's case amounts to nothing more than a garden-variety claim of excusable neglect. For this proposition, Veterans Court cited Irwin v. Department of Veterans Affairs. Irwin is the wrong legal standard. It predates the Supreme Court's Henderson decision, and as the Court pointed out in its recent Snead decision, which we submitted as supplemental authority after it came out, after pleadings were finished in this case, it focused too narrowly on whether the case fell into one of the factual patterns of past cases, considering section 7266. Do we even need to reach that issue if, in fact, we find that Veterans Court made a factual finding as it relates to the absence of the mailing? They still applied Irwin, which is the wrong legal standard, especially in light of the recent case law. But the factual, as far as a determination, such as it is a very short determination, that it was not mailed properly, we made in our alternative argument in our opening brief, we discussed the mailbox rule, which was not at all discussed by the Court of Appeals for Veterans Claims. Namely, that the Veterans Service Officer in this case has made representations that I don't really believe have been challenged, except for by the Veterans Courts implicit. We can address that argument, but my question is, is the Irwin issue even relevant? Does it matter who helped him or didn't help him if the trial court made a factual finding that there was no mailing? There was no evidence of the date of mailing. Right. I still think that the court needs to apply the right legal standard because they didn't ask even the right questions. The two-part test that's been articulated as far as due diligence and as far as extraordinary circumstances that this court has articulated and that the Supreme Court has articulated after Henderson have never even been asked by the Veterans Court. But I thought you were saying they shouldn't have applied the strict standard of Irwin, so that they shouldn't have just limited it to adversaries. I'm not clear on what your argument is on the Irwin. Well, the argument is not really – the argument is that Irwin just shouldn't be the case that's applied here. As the court decided recently… What's the difference? I'm not – like Judge Prost, I'm not understanding what the difference is. What difference between excusable garden variety neglect and whether or not it's a more liberal… Are you arguing that the veteran shouldn't be responsible for the default of his representative? Is that the point? That is a point in this case, Your Honor. Yes. Did you raise that before the Veterans Court? Before the Veterans Court, Your Honor, he was unrepresented at the Veterans Court or represented by the Veterans Service Officer, although not at the Veterans Court. He was unrepresented. So the argument was not raised before the Veterans Court? When he replied to the Veterans Court after the Henderson case… No, just yes or no. Was it raised before the… It was not. Okay. Was it raised in your opening brief here? The standard? No, the argument that the veteran shouldn't be responsible for the mistake made by his representative. Not in so many words, Your Honor. Not specifically that he should not be held responsible for the mistakes. But what we did brief in our opening and in our reply is that the court too narrowly looked at this. Basically, the Veterans Court only answered this narrow question. Well, they looked at it. The Veterans Service Officer… You can't just – you can't stop and say the error was that they looked at it too narrowly. You have to then say because they did not do whatever. And you're just telling Judge Dyke that you've never advocated or asserted that they should have allowed for the neglect of any kind of representative of any – right? I mean, you can't just stop and say they applied it too narrowly. I think – I have two responses to that, Your Honor. What we did say is that they – that the court should have applied the correct standard. And under the correct standard, if they would have taken the – if they would have taken the opportunity to look at whether or not the veteran was duly diligent and whether or not there were extraordinary circumstances, a different outcome would likely be reached in the case. So that standard would mean that he shouldn't be – if his representative made an error or failed to make it on time, he should not be held accountable? Is that the legal standard you're advocating? Well, I think that the legal standard is really more in line. I don't know that it needs to be articulated that way, but the court, when pleadings were done in this case, handed the Sneed decision down. And then it handed Woolwind down, and it's recently handed Dixon down. And what those cases stood for the proposition was that neglect by either an attorney in Sneed or in Woolwind by – and I understand that's not precedent, but it can be persuasive – in Woolwind, a veteran service officer, them acting negligently can be ground. And the court has never even considered that. But you didn't ever raise it. You didn't raise it before the Veterans Court. You didn't raise it here in your opening brief. How can you bring it in now? I mean it's not as though this argument is new. Sneed relied on Supreme Court's decision in Holland. If you didn't raise the issue, it's too late, isn't it? But we did – we cited both to Henderson, and I believe that we cited to Holland in our pleadings, saying that the standard is the wrong standard, that Irwin is basically not the right test anymore. And even still, the Holland case and the Henderson case, as well as a long line of cases from this court, have that two-part test that was not applied at all in Mr. Sneed's case, and that's the legal error here. So even though Sneed came out and was enlightening, in my opinion is enlightening to the court, because we didn't get a chance to brief it, we did talk about Holland and we did talk about Henderson and we did talk about the two-part test that should be applied here and not the garden variety neglect standard that the court used. All right. Can we go back to the other question, as it relates to the mailbox rule? Certainly, Your Honor. If we disagree with you on Irwin and all you have left is your argument about the mailbox rule, then how is there not a finding of fact by the Veterans Court that would put an end to that entire discussion? Well, I think that there's not a finding of fact sufficient by the Veterans Court because of this court's Rios decision. And the Rios decision, I don't think that the Veterans Court really asked the right question here. They went out and there were some representations, to be fair, representations made by the Department of Veterans Affairs that they did not get what was essentially a notice of disagreement but was, in fact, an intent to file an appeal. But that's not the right question. The question is whether it was mailed, whether the Veterans Service officer put it in the mail. Exactly, because the mailbox rule doesn't come into apply until there's evidence of mailing, the actual mailing. Yes, Your Honor. And what the trial court found here is that there was no evidence that anything was ever mailed or the date on which it would have been mailed. But in making that determination, in my reading of the Veterans Court's decision, in making that determination, they were relying on VA's representations that they didn't receive or that they couldn't find it. But there was nothing in the record where you didn't have a declaration saying, I actually mailed it. I mean, it was, you know, there was, your claimant says he was told that it was mailed. I mean, his representative was there and all he said was he mailed it, but that's just argument. Well, the Veterans Service officer did say, I mailed it on this date. And then he did own up to the Veterans Service officer specifically said, I mailed it on this date. I mailed it within 122 days. I mailed it to the wrong place. I did not mail it to the Veterans Court, but I did mail it on, I think. Where is there anything in the record where that statement is made under oath? Page 88 of the appendix. It was made, and to be fair about that, made under oath, that's an affidavit, and it was obtained and submitted to this court. It was not before the Veterans Court. However, similar statements from this Veterans Service officer were before the Veterans Court. But not under oath before the Veterans Court. Not before the Veterans, not under oath before the Veterans Court. I mean, you can't put evidence in here. I understand that, Your Honor, but it goes to illustrate the point that the Veterans Court did not even undertake the fact finding that it necessarily should have in this case. Well, that seems to be another argument you make, which I guess I'm having trouble embracing, which is that he's got to establish that there's jurisdiction, and you're saying that the Veterans Court, because his submission was adequate, should have gone back and done what, say, we need this under oath, done its own investigation, which I guess it kind of did by looking at the documents. What more should the Veterans Court be doing in these kinds of circumstances? I think that the Veterans Court, and Dixon touches on this a little bit, and the Barrett case touches on it a little bit, that the Veterans Court does, and that the duty to assist still did apply at this point, and I think that they could have ordered. Basically, all they said when they recalled mandate was something to the effect of, Henderson came out, and I think they said it to Mapu, and said, if you veterans think that your case should be heard at the Veterans Court, please tell us. But they didn't articulate anything other than that. And I think that the Veterans Court could have issued an order asking, okay, we understand that you say that you mail this. Will you say it under oath? What more did you do? What more can we do to determine whether or not the mailbox rule is met in this case? But they didn't, because they didn't even apply the mailbox rule correctly. Did anyone argue the mailbox rule to the Veterans Court? At the Veterans Court, again, he was unrepresented at that point in time, and he's liberally construing which a pro se veteran's case of this court's case law makes clear that the pleadings of an unrepresented veteran should be liberally construed. Liberally construed, he was saying, this was mailed. It was mailed to the wrong place by a veterans service officer on whom I was relying. I'm paraphrasing here, but he did say this. He didn't have the legal training to say this is the mailbox rule under Rios, but he did say this was mailed. It just went to the wrong place. So I think fairly construed, it was before the Veterans Court. And you think it's incumbent upon the Veterans Administration under its duty to assist, to then go back and come back with a series of questions or probes? I mean, they don't know what's going on at the other end. Think about, well, look at your records if you've moved.  Why necessarily are they compelled to do that? I think that the Barrett standard, like we said in our pleadings, I don't know that we're asking for a real broad rule that under 5103 big A, VA owes this, but I think that under Barrett and under the Dixon case that was just handed out this week, I think that there are some follow-up questions that are appropriate for the Veterans Court to ask in this case. In cases like this where we have unrepresented veterans that seem to have a decent excuse for not meeting the 120-day deadline. But I don't know that a broad rule needs to be articulated, but these are all things that can be discussed on remand at the Veterans Court because that gets into factual territory pretty quickly. Okay. Thank you, Mr. Stone. Thank you, Your Honor. Good morning, and may it please the Court. The Court should dismiss this appeal or alternatively should affirm the Veterans Court's decision. The Veterans Court determined as a factual matter that the evidence did not show when the notice of appeal was mailed. This Court obviously may not review that factual determination. Without that showing, all we're left with is an untimely filing by a veteran's representative to the VA. As the Veterans Court held, that simply is not a basis for equitable tolling. The Veterans Court did not misinterpret the law regarding equitable tolling. It didn't limit the equitable tolling doctrine or treat examples as the exclusive parameters of equitable tolling. It simply said equitable tolling does not apply here under these facts and under the circumstances present in this case. So do we need to get to the whole issue of the Irwin Standard or whether it's appropriate to say that help from a VO is completely excluded from the equitable tolling consideration? No, I don't think the Court does need to reach that issue. Moreover, as counsel conceded, they didn't raise that issue either in the opening brief here or before the Veterans Court, but I do want to, if I may, address the merits of that issue as well. Under Mr. Ladd's view, the exception would effectively swallow the rule. I mean, we're talking about equitable tolling here, which is an equitable principle that is limited. And it is equitable, so that's what I'm trying to understand. Is it really your position that it has to be a VA employee or your adversary and nobody else? No, and that's not what the – That's what the trial court found, though, the Veterans Court. What the Veterans Court found is under these facts and circumstances, he simply – all they could find in the record was an allegation that he was relying upon a service representative to mail it and it wasn't mailed without more. In fact, it was more than that. I'm sorry? There was more than that in the record, right? I mean, there's a notation, if I recall correctly, that it was mailed on a particular date. Well, that goes to the fact of mailing, yes. That's right. But we don't review those facts in this court, respectfully, Your Honor. What if we were to conclude that the Veterans Court had overlooked relevant evidence? Can we send it back under those circumstances? Well, but the presumption, Your Honors, this court has held is that the Veterans Court has considered all the evidence in the record. Keep in mind, when it asked for a submission from Mr. Ladd regarding equitable tolling, he simply provided a very short paragraph saying, I think equitable tolling applies. The Veterans Court then went back and looked at the record and tried to root out what facts might support his equitable tolling claim, looked at the statement from his representative, which didn't say when the mailing was actually mailed. But there was a notation of the date. And there was a notation on the letter. But as the VA pointed out before the Veterans Court in its submission, there was a notation on another letter as well, which wasn't received until eight months later, I believe, thereby suggesting that it may not have, in fact, been mailed when the notation indicated it was mailed. And those two were supposedly mailed on the same day, right? A day apart, actually, I believe. With respect to the issue of the legal standard, I mean, equitable tolling, the Supreme Court has made it clear that equitable means that there could be any variety of things that might lead the courts to conclude that there were extraordinary circumstances. And so that's why I'm having a little bit of trouble, if we even get to the standard, with the Veterans Court's statement that equitable tolling is just limited to those specific circumstances in which a VA employee or an adversary misled someone. Well, the Veterans Court didn't say that in its decision. It didn't limit the equitable tolling, the circumstances under which equitable tolling may be found. It simply said, noted the fact that here the notice of appeal was sent to the VA. And that that, if it had been timely, could, in fact, serve as a basis for equitable tolling. It also noted the fact that it was a service representative that submitted it. It wasn't the VA and said that, well, that's simply a case of excusable neglect. As I understand it, you're saying that the Veterans Court did two things. It said, one, if he's saying I relied on the representative and he didn't file on time and I shouldn't be held responsible for that to the extent that he said that. They said, no, you can't rely on that because this person wasn't a representative of the VA. But then it didn't seem to use that ground in rejecting the filing in the wrong place through mailing. It seemed to specifically recognize that even though the person wasn't a VA representative, that the mailbox rule and the misfiling rule still apply. Yes, I think that's right, Your Honor. And if I could just talk a little bit more about the argument that the standard should somehow be different here. Again, the exception would swallow the rule under Mr. Ladd's view. He seems to be saying that mere reliance upon a veteran service agent without more, without anything else in the record, that that would suffice. Well, that would open up the equitable tolling doctrine to far beyond its current parameters. Isn't it possible that both positions are too extreme? The fact that it's a veterans officer shouldn't exclude the possibility that there were extraordinary circumstances, as at least it seems like the Veterans Court said in an alternative finding. But it also doesn't necessarily give rise to a finding of extraordinary circumstances. Well, I think that's right, except I would disagree that the Veterans Court actually made that finding. I don't think the Veterans Court excluded reliance upon a service officer here. It just said under these facts and circumstances, there are no, it's simply excusable neglect. Moreover, there are a number of cases involving equitable tolling and veteran service organizations where this court has cited the excusable neglect standard as recently as the Wolwin case, but also in Leonard. Leonard involved the American Legion. Wolwin involved the disabled American veterans. Further, in Tyrouse, this court rejected the argument that Henderson somehow has expanded the standard under 7266 with respect to equitable tolling. I wanted to address the argument that the Veterans Court should have asked for additional evidence from Mr. Ladd. This court has made clear that it's the claimant's burden to demonstrate the basis for equitable tolling as recently as the Sneed case. This court noted that. And, of course, proceedings before the Veterans Court are adversarial. Here, the Veterans Court afforded Mr. Ladd a full opportunity to present his evidence. Mr. Ladd also could have moved for reconsideration to challenge the factual determinations underlying the equitable tolling decision. He didn't. Mr. Ladd, in his brief, relies on the Barrett case, but Barrett said that where the evidence required to prove a fact is peculiarly within the knowledge and competence of one of the parties. Fairness requires that party to bear the burden of coming forward. Finally, with respect to the citations of supplemental authority, in the Sneed and Wolwin cases, those involved allegations of attorney abandonment or, in Wolwin, abandonment by a representative. We don't have any such allegations here. In this case, in fact, he makes the opposite allegation that his representative acted diligently. Here, the Veterans Court did not limit equitable tolling to only certain circumstances. It simply applied the law to the facts of this case. So for these reasons, we respectfully request that the court dismiss this case or alternatively affirm the Veterans Court's decision. Thank you. Judge O'Malley, to your point about both positions being too extreme, Mr. Ladd is arguing for remand in this case. So it gets sent back to the Veterans Court, and I do remain in disagreement as we pled in our opening and reply briefs and as we articulated when we submitted supplemental authority. The legal standard that the Veterans Court used here is wrong. They cited to Irwin. They did not go through the equitable tolling standard that was articulated in the post-Henderson line of cases. On remand, if they were to apply the correct standard, a different outcome is possible in this case, as well as the correct mailbox rule standard, which was not… What case undermines Irwin? I'm sorry? What case undermines Irwin? I don't think that – I think that what's undermined by Irwin is the entire line of cases from Henderson on forward through Mapu and Bogue. So what those cases are doing is saying that excusable – that garden variety excusable neglect of a VA employee is not the standard, and that's the standard that the court looked at. Read in the Veterans Court. There's nothing wrong with Irwin. In other words, it's your – it's what you say they put the wrong gloss on Irwin. The thing that is wrong with Irwin is that it's far too restrictive. It's the Supreme Court. They haven't changed it, have they? They have not changed it, but I think that it's – that the court would be more fully – it would be in keeping, as the court talked about in Dixon, the type of paternalistic and the type of pro-veteran environment that our entire scheme exists in, I think, is better articulated by the cases that have come out since Henderson. Our cases have never said that we can overrule Irwin. I mean, at most, they've said overrule – that Irwin did not – wasn't meant to be an exclusive list of circumstances. But in Snead, the court did send it back saying that holding a veteran only to the question of whether or not a VA employee was the reason for the late filing was too restrictive of a reading. And just as in this case, it is too restrictive of a reading to just hold – the court held them to the same standard that was held in Snead, Woolman, and in Dixon. It's too restrictive of a standard. of the filing, they're recognizing that it doesn't have to be a VA employee, right? I don't know that that is what that's saying. That paragraph is problematic for our second argument because, again, that's the part where they go astray and not applying the correct mailbox rule as articulated in Rios because that's really not even a correct statement. Fails to submit any evidence or argument demonstrating circumstances that warrant equitable tolling. He did. What about the fact – because if I were sitting as a trier of fact, I might find it compelling that he supposedly mailed two things on the same day and that neither one of them ended up where they were supposed to. One ends up showing up eight months later. So, I mean, doesn't that indicate that perhaps neither one of them were mailed when he said they were? It may, but what we have from the veterans – and this court is not going to get into the facts. I know that well enough, but it is something that the veterans court can do if they were to apply the correct equitable tolling standard and apply the correct mailbox rule standard as articulated in Rios. If those legal instructions were given to the veterans court, a different outcome could happen, but the facts need to be done at the veterans court. All we are asking for today is to send this back in light of all the recent case law and in light of the fact that they did not apply the mailbox rule correctly. Send it back with the correct legal standard to be used, and at that point, the veterans court can get into the facts of the situation. Thank you, Mr. Stiles. Thank you, Your Honor. We thank our counsel for the cases submitted.